**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

JOSUE A. GONZALEZ,

                              Plaintiff,

            v.                                                    No. 1:23-CV-01198
                                                                  (GTS/CFH)
CITY OF KINGSTON, et al.,

                              Defendants.

───────────────────────────────

**APPEARANCES:**

Josue Antonio Gonzalez
431 Lawrie Street
Perth Amboy, New Jersey 08861
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**

        Plaintiff pro se Josue A. Gonzalez commenced this action on August 25, 2023,

with the filing of a complaint and, in lieu of paying this Court's filing fee, an application to

proceed in forma pauperis ("IFP").  See Dkt. No. 1 ("Compl."); see also Dkt. No. 3.  On

September 21, 2023, plaintiff filed a document titled "amended complaint."  See Dkt. No.

4.[1]

───────────────────────────────

[1] Plaintiff filed an "'amended' complaint" "to add the information of Judge Gilpatrick [sic] and the acts of
Judge Farrel [sic] for adjudication."  Dkt. No. 4.  An amended pleading, however, "is designed to include
matters occurring before the filing of the [original claim], but either overlooked or not known at the time."
Slavenburg Corp. v. Bos. Ins. Co., 30 F.R.D. 123, 126 (S.D.N.Y. 1962) (internal quotation marks omitted).
Moreover, "[a]n [a]mended [c]omplaint, if filed, will completely replace the [c]omplaint, and the [c]ourt will
not consider any allegations made in the original [c]omplaint in evaluating any [a]mended [c]omplaint."
Fraser v. Franco, No. 3:22-CV-1014 (SALM), 2022 WL 4367576, at *8 (D. Conn. Sept. 21, 2022).  By
contrast, "[a] supplemental pleading stands with the original pleading and is a mere addition to, or
continuation of, the original complaint or answer; [i]t is designed to obtain relief along the same lines,

## I. In Forma Pauperis

After reviewing plaintiff's IFP application, the undersigned concludes that plaintiff financially qualifies to proceed IFP. [2]  See Dkt. No. 3.

## II. Initial Review

### A. Legal Standard

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action."  Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such

---

pertaining to the same cause, and based on the same subject matter or claim for relief, as set out in the original complaint."  Allen v. Baker, No. 5:21-CV-280 (GWC/KJD), 2023 WL 112298, at *2 (D. Vt. Jan. 5, 2023) (internal quotation marks and citations omitted).  Although plaintiff's filing is labeled as an "Amended Complaint," the filing "does not incorporate all the allegations, claims, and parties included in the original Complaint, but rather merely adds to the Complaint"; thus, the undersigned deems it to be a supplemental pleading.  Id. at *3; see Compl.; see also Dkt. No. 4.

[2] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

2

> submissions must be read to raise the strongest arguments
> that they suggest.  At the same time, our cases have also
> indicated that we cannot read into pro se submissions claims
> that are not consistent with the pro se litigant's allegations,
> or arguments that the submissions themselves do not
> suggest, that we should not excuse frivolous or vexatious
> filings by pro se litigants, and that pro se status does not
> exempt a party from compliance with relevant rules of
> procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).  Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims.  Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]."  Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d

Cir. 1994)).[3]  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . . ; and
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  FED. R. CIV. P. 8(d).

Further, Rule 10 of the Federal Rules provides that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of

---

[3] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**B. Plaintiff's Complaint**

Plaintiff's complaint is written on a form complaint for civil rights violations pursuant to 42 U.S.C. § 1983, and appears to challenge police, prosecutorial, and judicial actions. See generally Compl. Plaintiff brings his claims against (1) the City of Kingston; (2) Ulster County; (3) David J. Clegg, in his official and individual capacities as District Attorney of Ulster County; (4) James P. Gilpatric, in his official and individual capacities as a "Supreme Court Judge"; (5) Philip W. Kirschner, in his official and individual capacities as a "Kingston City Court Judge"; and (6) James R. Farrell, in his official and individual capacities as an "Ulster County Court Judge[.]" Compl. at 2-4; see Dkt. No. 4 at 2.[4]

Plaintiff alleges that, between May 1, 2021, and June 30, 2022, "Ulster County[,] by the acts of it agents including the City Police[,] . . . facilitated the enforcement of void or invalid orders of protection [that were] forced upon and between the parties subject to

---

[4] Citations are to the pagination generated by CM/ECF, located in the header of each page.

[the orders]." Compl. at 6. Plaintiff claims that, by doing so, Ulster County violated his First Amendment "right to free[dom of] association." Id. at 7.

Between December 1, 2021, and January 29, 2022, District Attorney David Clegg "committed perjury causing [plaintiff] to be charged with an aggravated felony offense . . . and criminal contempt in the first degree without the consent of the alleged victim[.]" Compl. at 6. Clegg "continu[ed] the action [even] after the Court ordered restoration of communication with the alleged victim[, who was] the alleged protected party of the alleged criminal contempt [charge]." Id. Clegg also continued the action after the Court "dismiss[ed] a similar [aggravated felony charge] for the same alleged conduct as the aforementioned[.]" Id. Plaintiff claims that Clegg violated his Fourteenth Amendment due process and equal protection rights. See id.

Plaintiff filed a habeas corpus petition, and on December 28, 2021, Judge Gilpatric wrongfully denied this petition "by denying [plaintiff's] in forma pauperis application[,] stating [he] must pay the full filing fee upon an improper finding of [his] financial circumstance[s]." Compl. at 7. Plaintiff claims that Judge Gilpatric violated his Fourteenth Amendment due process and equal protection rights. See id.

Sometime between January 1, 2022, and January 17, 2022, the City of Kingston "issued an unlawful warrant for [plaintiff's] arrest out of the Kingston City Court[.]" Compl. at 6. Plaintiff claims that this was a violation of his Fifth and Sixth Amendment rights "against unlawful seizure and right to be informed of the cause and nature of the case against [him]." Id. Plaintiff also claims that the City of Kingston violated his First Amendment right to freedom of association. See id. at 8.

6

On January 29, 2022, Judge Kirschner did not "establish the proper jurisdiction of the [Court by] failing to produce or read any accusatory instrument[.]"  Compl. at 7.  Judge Kirschner also failed to "follow the statutory requirement of the verbal entry of a plea by [plaintiff]."  Id.  Plaintiff claims that Judge Kirschner violated his Fourteenth Amendment due process and equal protection rights.  See id.

Lastly, "on several dates between March 1, 2022 and September 20, 2023," Judge Farrell "failed to provide [plaintiff] with an arraignment, command a complete and lawful discovery at the request of [plaintiff], provide hearings on the motion of [plaintiff] to review the sufficiency of the grand jury minutes, and conduct a habeas corpus hearing at the request of [plaintiff]."  Dkt. No. 4 at 4.  Plaintiff claims that Judge Farrell violated his Fourteenth Amendment due process and equal protection rights.  See id.

Plaintiff requests (1) "$50,000.00 in monetary relief from each party involved without prejudice to sue for the remainder"; (2) an "order directing Judge Farrell to R.O.R. [plaintiff] in accordance with the provisions of the Bail Reform Act for failure of the District Attorney's office to produce a timely and complete discovery"; and (3) "an order directing Judge Farrell to dismiss the criminal contempt 1st for failure to state a cause of action."  Compl. at 8-9.

## C. Analysis

The undersigned has liberally construed plaintiff's allegations in light of his pro se status.  See, e.g., Torres v. Carry, 800 F. Supp. 2d 577, 582 (S.D.N.Y. 2011) ("[W]here, as here, a party appears pro se, courts must construe pro se pleadings broadly and interpret them 'to raise the strongest arguments that they suggest.'") (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996), and citing Burgos v. Hopkins, 14 F.3d 787,

790 (2d Cir. 1994)).  "As asserted in his complaint, plaintiff brings this action pursuant to [28 U.S.C. § 1983], which is the appropriate mechanism for the relief sought."  Barzee v. Tyler, No. 8:21-CV-902 (GTS/CFH), 2022 WL 1406606, at *6 (N.D.N.Y. May 3, 2022) (citing Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) (noting that § 1983 "provides a mechanism for enforcing individual rights secured elsewhere, i.e., rights independently secured by the Constitution and the laws of the United States")), report and recommendation adopted, 2022 WL 2079084 (N.D.N.Y. June 9, 2022).  Plaintiff alleges violations of his federal constitutional rights, with specific First, Fifth, Sixth, and Fourteenth Amendment claims.[5]

### 1. Municipal Liability

Plaintiff names the City of Kingston and Ulster County as defendants.  See Compl. at 2-3, 6.[6]  "To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'"  Dougal v. Lewicki, No. 1:23-CV-1167 (DNH/CFH), 2023 WL 6430586, at *10 (N.D.N.Y. Oct. 3, 2023) (quoting Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012), and citing Monell v. Dep't of

---

[5] Although plaintiff's civil cover sheet indicates the basis of jurisdiction for this matter is diversity jurisdiction, the matter is actually before the Court under its federal question jurisdiction.  See Dkt. No. 1-1.

[6] To the extent plaintiff seeks to bring a claim against the "Ulster County" "City Police," such claim would fail.  See Compl. at 6.  "It is well established that '[a] police department is an administrative arm of [a] municipal corporation,' and 'cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.'"  Kelly v. Colonie Police Dep't, No. 8:20-CV-721 (GTS/CFH), 2020 WL 6465448, at *3 (N.D.N.Y. Sept. 21, 2020) (quoting Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999), and citing Hester-Bey v. Police Dep't, No. 12-CV-3320 (KAM), 2012 WL 4447383, at *1 (E.D.N.Y. Sept. 24, 2012) (explaining that "[s]ection 1983 provides that an action may only be maintained against a person who has deprived another of rights under the Constitution and Laws," and holding that, "because [t]he New York City Police Department is not a person within the meaning of section 1983 [it] is therefore[ ] not a suable entity")), report and recommendation adopted, 2020 WL 6445901 (N.D.N.Y. Nov. 3, 2020).  Thus, the "Ulster County" "City Police" is not a proper defendant for plaintiff's § 1983 claims.

Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978)), report and recommendation adopted, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023).  "Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it 'may not be held liable on a theory of respondeat superior.'"  Id. (quoting Jeffes v. Barnes, 208 F.3d 49, 56 (2d Cir. 2000)).  An "official policy or custom" of the municipality can be shown in several ways:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

Dorsett-Felicelli, Inc. v. Cnty. of Clinton, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citations omitted).  "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details."  Tieman v. City of Newburgh, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015); see Oklahoma City v. Tuttle, 471 U.S. 808, 809 (1985) ("There must at the very least be an affirmative link between the municipality's policy and the particular constitutional violation alleged.").

Plaintiff contends that "the City of Kingston" "issued an unlawful warrant for [his arrest," and that "Ulster County[,] by the acts of its agents including the City Police[,]" "facilitated the enforcement of void or invalid orders of protection[.]"  Compl. at 6. However, plaintiff has failed to identify or allege any facts showing the existence of a

municipal policy or custom of the City of Kingston or Ulster County which caused his alleged constitutional violations.  See Boyde v. New York, No. 5:16-CV-555 (LEK/TWD), 2016 WL 3573133, at 4 (N.D.N.Y. May 19, 2016) (dismissing on § 1915 review the plaintiff's complaint against Onondaga County and the City of Syracuse because the plaintiff "failed to identify or allege any facts showing the existence of a municipal policy or custom . . . which caused his alleged false arrest [and other constitutional violations]"), report and recommendation adopted, 2016 WL 3580768 (N.D.N.Y. June 28, 2016).  Plaintiff also has not alleged facts plausibly showing that the City of Kingston and Ulster County failed to properly hire, supervise, and train subordinates in connection with his claims.  See Dougal, 2023 WL 6430586, at *10 (dismissing on § 1915 review the plaintiff's complaint against Saratoga County because the plaintiff did "not include any allegations in his complaint concerning municipal conduct that states a Monell claim").  Thus, he has failed to state a municipal liability claim against the City of Kingston and Ulster County, and it is, therefore, recommended that such claims be dismissed.

### 2. Prosecutorial Immunity

Plaintiff also names as a defendant District Attorney David Clegg, in his official and individual capacities.  See Compl. at 3, 6.  However, "[p]rosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation."  Peterson v. Kyler, No. 5:16-CV-876 (FJS/ATB), 2016 WL 4257308, at *2 (N.D.N.Y. July 20, 2016) (citing Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) (noting that prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence), and

Bernard v. County of Suffolk, 356 F.3d 495 (2d Cir. 2004) (explaining that absolute immunity shields prosecutors from suit pursuant to § 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury)), report and recommendation adopted sub nom. Peterson v. Kyles, 2016 WL 4257357 (N.D.N.Y. Aug. 11, 2016).  "This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.'"  Giraldo v. Kessler, 694 F.3d 161, 165 (2d Cir. 2012) (quoting Imbler v. Pachtman, 424 U.S. 409, 431 n.33 (1976)); see Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) ("Prosecutorial immunity from § 1983 liability is broadly defined").  "[A] prosecutor's functions preliminary to the initiation of proceedings include 'whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present.'"  Giraldo, 694 F.3d at 165 (quoting Imbler, 424 U.S. at 431 n.33); see also LoPorto v. Cnty. of Rensselaer, No. 1:15-CV-0866 (LEK/DJS), 2018 WL 4565768, at *7 (N.D.N.Y. Sept. 24, 2018) ("The initiation of a prosecution is an essential element of a malicious prosecution claim, and so prosecutors are generally immune to malicious prosecution claims.").

Plaintiff alleges that Clegg "committed perjury causing [plaintiff] to be [falsely] charged with aggravated felony [and criminal contempt] offense[s]."  Compl. at 6. However, Clegg is absolutely immune from suit in his individual capacity.  See Golston v. Cortese, No. 1:21-CV-914 (GTS/CFH), 2022 WL 2657290, at *5 (N.D.N.Y. Apr. 1, 2022) ("To the extent [the] plaintiff alleges actions associated with [the prosecutor's] function as an advocate . . . , [the prosecutor] is absolutely immune from suit in his

individual capacity."), report and recommendation adopted, 2022 WL 2071773 (N.D.N.Y. June 9, 2022).

To the extent plaintiff seeks to bring a claim against Clegg in his official capacity, "this District has held that claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant." Sears v. Carmichael, No. 8:18-CV-909 (DNH/CFH), 2018 WL 7291417, at *2 (N.D.N.Y. Aug. 6, 2018) (quoting Wallikas v. Harder, 67 F. Supp. 2d 82, 83 (N.D.N.Y. Oct. 25, 1999), and citing Busby v. City of Orlando, 931 F.2d 764, 766 (11th Cir. 1991)), report and recommendation adopted, 2019 WL 587587 (N.D.N.Y. Feb. 13, 2019).  "The real party in interest in an official capacity suit is the governmental entity and not the named official." Booker v. Board of Educ., Baldwinsville Cent. Sch. Dist., 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002).  Plaintiff also named Ulster County as a defendant in this action, see discussion supra Subsection II.C.1, "and as such, the claims against [Clegg] in his official capacity should be dismissed as 'redundant.'" Golston, 2022 WL 2657290, at *5 (quoting Sears, 2018 WL 7291417, at *2).  Finally, "when a district attorney is sued for damages in his official capacity, the suit is deemed to be a suit against the state," and, thus, the official has "the Eleventh Amendment immunity belonging to the state." McKeon v. Daley, 101 F. Supp. 2d 79, 86 (N.D.N.Y. 2000), aff'd, 8 F. App'x 138 (2d Cir. 2001) (summary order).  Accordingly, it is recommended that all claims alleged against District Attorney David Clegg, in his individual and official capacities, be dismissed.

### 3. Judicial Immunity

Plaintiff also brings claims against Judge Gilpatric, Judge Kirschner, and Judge Farrell.  See Compl. at 2-7.  It is well settled that, "[w]ith minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions."  Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991)); see, e.g., Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999).

> This immunity applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.

Pierson v. Ray, 386 U.S. 547, 554 (1967) (internal quotation marks and citations omitted); see Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004) ("Judicial immunity has been created both by statute and by judicial decision 'for the benefit of the public'") (citing Pierson, 386 U.S. at 554).  "Judicial immunity is immunity from suit, not just immunity from the assessment of damages."[7]  Scott v. Djeck, No. 5:09-CV-1122 (GTS/GHL), 2010 WL 145297, at *5 (N.D.N.Y. Jan. 11, 2010) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  "However, there are two circumstances in which judicial immunity does not apply: when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'"  Id. (quoting Mireles, 502 U.S. at 11-12).

---

[7]  "Injunctive relief against judges is also barred 'unless a declaratory decree was violated or declaratory relief was unavailable.'"  Amato v. McGinty, No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at *3 (N.D.N.Y. June 6, 2017) (quoting Bobrowski v. Yonkers Courthouse, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011)), report and recommendation adopted, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017).

"In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.'" Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Justice Court, 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)).  "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."  Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted).  "Further, if the judge is performing in his judicial capacity," he "'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.'" Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)).  "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.'"  Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Plaintiff alleges that Judge Gilpatric wrongfully "denied [his] habeus [sic] corpus application by denying [his] in forma pauperis application."  Compl. at 7.  Plaintiff further claims that Judge Farrell "failed to provide [him] with an arraignment, command a complete and lawful discovery . . . , provide hearings on [his motion] . . . , and conduct a habeus [sic] corpus hearing[.]"  Dkt. No. 4 at 4.  Plaintiff contends that Judge Gilpatric and Judge Farrell violated his Fourteenth Amendment equal protection and due process

rights.  See Compl. at 7; see also Dkt. No. 4 at 4.  However, plaintiff does not allege that either Judge Gilpatric or Judge Farrell "acted absent jurisdiction or outside the bounds of their judicial authority."  Dougal, 2023 WL 6430586, at *5.  Thus, as plaintiff's claims against Judge Gilpatric and Judge Farrell concern conduct taken in their capacities as judges, they are immune from suit.  See Shtrauch v. Dowd, 651 F. App'x 72, 73-74 (2d Cir. 2016) (summary order) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature'") (quoting Bliven, 579 F.3d at 210).

Plaintiff alleges that Judge Kirschner "failed to establish the proper jurisdiction of the [Court]" as he "fail[ed] to produce or read any accusatory instrument" or obtain plaintiff's "verbal entry of a plea[.]"  Compl. at 7.  However, "[t]he scope of the judge's jurisdiction must be construed broadly, such that a court acts in the absence of all jurisdiction only when it does not have any statutory or constitutional power to adjudicate the case."  Dickerson v. Siegal, No. 23-CV-3859 (EK/LB), 2023 WL 6158833, at *3 (E.D.N.Y. Sept. 21, 2023) (citing Stump, 435 U.S. at 356, and Gross v. Rell, 585 F.3d 72, 84 (2d Cir. 2009)) (internal quotation marks omitted).  Plaintiff has not alleged that Kirschner acted in "complete absence of all jurisdiction."  Pacherille, 30 F. Supp. 3d at 163.  Specifically, plaintiff does not dispute that Judge Kirschner, as a "Kingston City Court Judge," had jurisdiction over his proceedings.  See Maestri v. Jutkofsky, 860 F.2d 50, 53 (2d Cir. 1988) (noting that Supreme Court has drawn a critical distinction "between 'excess of jurisdiction' and 'clear absence of all jurisdiction'" and holding that "the scope of the judge's jurisdiction [is to be] construed broadly") (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1871)); see also Olszyk v. Thorne, No. 3:20-CV-0445

(TJM/ML), 2020 WL 5634328, at *5 (N.D.N.Y. June 17, 2020) ("The Complaint is devoid of facts plausibly suggesting that Defendant [Judge] Barrasse acted in the clear absence of all jurisdiction.  As a result, I recommend that the claims against Defendant Barrasse be dismissed in their entirety based on the doctrine of absolute judicial immunity."), report and recommendation adopted, 2020 WL 5633791 (N.D.N.Y. Sept. 21, 2020).  Therefore, Judge Kirschner is also entitled to absolute immunity.

To the extent plaintiff seeks to bring an action against Judge Gilpatric, Judge Farrell, or Judge Kirschner in their official capacities, the suit is barred by the Eleventh Amendment.  See Pacherille, 30 F. Supp. 3d at 163 n.5 ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").  Accordingly, the undersigned recommends dismissing the claims against Judge Gilpatric, Judge Farrell, and Judge Kirschner in their individual and official capacities as barred by both judicial immunity and Eleventh Amendment immunity.

### 4. Heck, Younger, and Rooker-Feldman

Plaintiff's complaint suggests that he was "unlawful[ly]" charged with an aggravated felony offense and a criminal contempt offense, and subsequently arrested.  Compl. at 6-7.  Liberally construing his allegations, it appears that plaintiff is raising claims for malicious prosecution and false arrest.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); see

also Alvarez v. City of New York, No. 22-CV-8689 (PKC), 2024 WL 1140659, at *4 (S.D.N.Y. Mar. 15, 2024) ("The 'gravamen' of a malicious prosecution claim is 'the wrongful initiation of charges without probable cause.'") (quoting Thompson v. Clark, 596 U.S. 36, 43 (2022)); Little v. City of New York, 487 F. Supp. 2d 426, 437 (S.D.N.Y. 2007) ("'False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment.'") (quoting Covington v. City of New York, 171 F.3d 117, 125 (2d Cir. 1999) (Glasser, J., dissenting)).

To the extent plaintiff asserts these claims against District Attorney Clegg, Judge Gilpatric, Judge Farrell, or Judge Kirschner, these individuals are absolutely immune from suit in both their individual and official capacities.  See discussion supra Subsection II.C.2, 3.  To the extent plaintiff asserts these claims against the City of Kingston and Ulster County, he must also establish municipal liability as discussed above.[8]  See discussion supra Subsection II.C.1; see also Anilao v. Spota, 774 F. Supp. 2d 457, 495 (E.D.N.Y. 2011) ("[A] municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal 'policy or custom.'") (quoting Monell, 436 U.S. at 694-95), aff'd, 27 F.4th 855 (2d Cir. 2022); Biton v. City of New York, 416 F. Supp. 3d 244, 248 (E.D.N.Y. 2018) (dismissing the plaintiff's malicious prosecution claim against the City of New York under a Monell theory of liability because the plaintiff "fail[ed] to adequately allege a custom or policy giving rise to [the p]laintiff's alleged malicious prosecution"); Aurecchione v. Falco, No. 7:22-CV-04538 (NSR), 2023 WL 6255529, at *5-6 (S.D.N.Y.

---

[8] Plaintiff has not named as defendants any officers alleged to have been involved in the arrest, nor can his complaint be reasonably construed as attempting to allege such claims.

Sept. 25, 2023) (dismissing the plaintiff's claims for false arrest and malicious prosecution against Rockland County "because [the p]laintiff's allegations lack the specificity necessary for the Court to attribute the alleged constitutional violations to the County itself"); Hutson v. New York City Police Dep't, No. 15-CV-8797 (VEC), 2017 WL 727544, at *3 (S.D.N.Y. Feb. 23, 2017) ("Plaintiff has not alleged plausibly any grounds for the Court to infer that [any false arrest or malicious prosecution] was the result of an unconstitutional policy, unofficial custom, or a failure to train . . . [therefore the p]laintiff's Monell claim against the City is dismissed").

Moreover, to the extent plaintiff may wish to argue that the City of Kingston and Ulster County unlawfully charged and arrested him, and that unlawful arrest and charge was due to an official municipal policy or custom, "it is entirely unclear from his complaint the status of those charges, whether he was indicted, and whether he sustained any convictions as a result of these incidents." Parker v. Soares, No. 1:19-CV-113 (GLS/CFH), 2019 WL 2232591, at *4 (N.D.N.Y. May 23, 2019), report and recommendation adopted, 2019 WL 2491918 (N.D.N.Y. June 14, 2019); see Compl. at 6-7. In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-87 (1994).

"Here, as the Court is unable to determine whether plaintiff has been charged and/or convicted of any criminal charges arising out of the incidents underlying his complaint, and whether any potential convictions have been overturned, the Court cannot determine whether his [malicious prosecution and false arrest] claims are barred by Heck."   Parker, 2019 WL 2232591, at *4.

> As such claims would necessarily call into question the validity of the conviction he is challenging in this action, unless the Court can ascertain with certainty that there are no criminal charges pending as a result of these incidents, and that any convictions plaintiff has received, if any, have been overturned or otherwise deemed invalid, the Court cannot permit these claims to proceed.

Id.; see Gentry v. New York, No. 1:21-CV-0319 (GTS/ML), 2021 WL 3037709 (N.D.N.Y. June 14, 2021) (recommending dismissal as premature pursuant to Heck where the plaintiff failed to "specifically allege how the charges from [his criminal] case were resolved" and "failed to allege sufficient facts showing that the case filed against him . . . terminated in his favor"), report and recommendation adopted, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).  Thus, plaintiff's malicious prosecution and false arrest claims against the City of Kingston and Ulster County "should be dismissed without prejudice, allowing [p]laintiff the opportunity to plead the status of any related underlying criminal proceeding," including "whether there are any charges pending, whether any convictions arose out of these incidents, and, if so, whether they have been overturned." Everson v. Onondaga Cnty., No. 5:23-CV-00707 (TJM/TWD), 2023 WL 5759179, at *3 (N.D.N.Y. Sept. 5, 2023), report and recommendation adopted, 2023 WL 7013386 (N.D.N.Y. Oct. 24, 2023); Parker, 2019 WL 2232591, at *4 ("Accordingly, it is recommended that, insofar as [the] plaintiff's complaint attempts to raise claims for false

arrest, false imprisonment, and malicious prosecution, these claims be dismissed without prejudice and that plaintiff be provided leave to amend to specify whether there are any charges pending, whether any convictions arose out of these incidents, and, if so, whether they have been overturned.").

However, "[t]o the extent that plaintiff's criminal case is still pending in state court, it is well-settled that federal courts may not interfere with pending state criminal prosecutions, absent some extraordinary circumstance[.]"  Zavalidroga, 2017 WL 8777370, at *14 (noting that extraordinary circumstances include "bad faith prosecution, unconstitutional laws, or the lack of adequate process in state court for protecting the plaintiff's rights") (citing Younger v. Harris, 401 U.S. 37, 43-54 (1971)).  "This abstention is appropriate when there is a pending state proceeding, implicating an important state interest, and the state proceeding will afford the plaintiff an adequate opportunity for review of his federal constitutional claims."  Id. (citing Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003)); see Amato, 2022 WL 226798, at *11 ("Accordingly, to the extent that the child custody issues are continuing in Family Court, the Court should abstain from interfering with that process.").

Moreover, "[t]o the extent that [p]laintiff[ is] challenging the outcome of any adverse state-court proceeding, th[at] claim[ could be] barred under the Rooker-Feldman doctrine."  Sanchez v. Miller, No. 20-CV-0620 (CM), 2020 WL 1140843, at *5 (S.D.N.Y. Mar. 6, 2020) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)).  "The Rooker-Feldman doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal

court with jurisdiction over such cases."  Dorce v. City of New York, 2 F.4th 82, 101 (2d Cir. 2021) (citing 28 U.S.C. § 1257).  The doctrine applies if: "(1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff requests the district court to review and reject the state court judgment; and (4) the state court judgment was rendered before the proceedings commenced in the district court."  DeMeo v. Kean, 754 F. Supp. 2d 435, 448 (N.D.N.Y. 2010) (citing V.S. v. Muhammad, 595 F.3d 426, 430 (2d Cir. 2010)); see Wann v. St. Francois Cnty., No. 4:15-CV-895 (CDP), 2016 WL 866089, at *4 (E.D. Mo. Mar. 7, 2016) (concluding that the Rooker-Feldman doctrine did not bar the plaintiff's complaint where the plaintiff "does not ask th[e] Court to decide an issue that was already decided in state court.  Nor does he challenge or seek relief from any state court order or judgment.  Instead, [the plaintiff] contends that the defendants' conduct in bringing about state court action was unlawful in itself, causing him injury.").  However, given the absence of information in plaintiff's complaint, the undersigned is unable to determine whether the Younger or Rooker-Feldman doctrines would bar his complaint.

### III. Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted).  "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'"  Edwards v. Penix, 388 F. Supp. 3d

135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).  Insofar as District Attorney Clegg, Judge Gilpatric, Judge Farrell, and Judge Kirschner are immune from suit, it is recommended that the claims against them be dismissed with prejudice and without leave to amend.  As for the claims against the City of Kingston and Ulster County, it is recommended that they be dismissed without prejudice and with leave to amend should plaintiff wish to plead proper claims for municipal liability.[9]  See discussion supra Subsection II.C.1.  Should plaintiff wish to proceed against the City of Kingston and Ulster County under a theory of municipal liability pursuant to Monell, it is also recommended that plaintiff specifically allege if and how the charges from his criminal case were resolved in order for the Court to determine whether Heck, Younger, or Rooker-Feldman would bar his malicious prosecution and false arrest claims.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 3) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against District Attorney Clegg, Judge Gilpatric, Judge Kirschner, and Judge Farrell, in their official and individual capacities,

---

[9] Any amended pleading supersedes and replaces a prior pleading in its entirety.  In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference.  An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

be **DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's claims against the City of Kingston and Ulster County be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the District Judge's Decision and Order to file an amended complaint, and if plaintiff does not file an amended complaint, it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is

**ORDERED**, that the Clerk update the docket to reflect that plaintiff's "amended complaint" is a supplement to his original complaint; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.[10]

---

[10] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen

Dated: April 10, 2024
       Albany, New York


Christian F. Hummel
U.S. Magistrate Judge

---

(17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).